UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **JUDY LEPAGE** | : |
| **Plaintiff** | : |
| Vs. | : |
| | : C.A. No. |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA, d/b/a CIGNA GROUP INSURANCE** | : |
| **Defendant** | : |

**COMPLAINT**

Plaintiff Judy LePage hereby commences this action against the Defendant and alleges:

**I.      JURISDICTION AND VENUE**

1. Plaintiff, a citizen of the State of Rhode Island, invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA").

2. South County Hospital Healthcare System employed Plaintiff Judy Lepage ("Plaintiff Lepage") and provided Plaintiff with Short Term Disability (STD) and Long Term Disability (LTD) as a fringe benefit through her employment, and is a plan sponsor within the meaning of ERISA 29 U.S.C. § 2002(16)(B).

**II.     PARTIES**

3. Defendant Life Insurance Company of North America d/b/a Cigna Group Insurance ("Cigna") is a corporation duly organized under the laws of the State of Pennsylvania, with a principal office therein.

6

4. Defendant Cigna is the entity that administers LTD benefits as the "plan administrator" within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and § 1132 and a "fiduciary" within the meaning of 29 U.S.C. § 1002(21) of ERISA.

5. Plaintiff is a resident of the state of Rhode Island and an ERISA Plan Beneficiary within the meaning of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (3).

### III. FACT ALLEGATIONS

6. Plaintiff was employed by South County Hospital Healthcare System, working at South County Hospital full time as an orthopedic inpatient, acute care physical therapist working in the hospital with patients needing acute care.

7. On or about December 1, 2015, Plaintiff suffered a non-work related injury to her shoulders.

8. Plaintiff's occupation was physically demanding and requires hands on physical labor working in a hospital setting to assist hospitalized patients with various physical disabilities and rehabilitation needs.

9. Among other things, Plaintiff must be ready to immediately physically intervene if a patient becomes unsteady, and/or provide up to maximal physical assistance for improving patient functional mobility.

10. Plaintiff's occupation was classified as "medium" to "heavy" employment.

11. On or about December 13, 2015, Plaintiff went out of work due to the injury suffered to her shoulders.

12. At the time Plaintiff went out of work, she suffered from excruciating bilateral shoulder pain and lacked the physical ability to safely perform the essential functions of her job.

13. Plaintiff proactively sought and received all appropriate medical care, testing and

treatment for her shoulder injury, including surgery in March 2017, May, 2018, and December, 2019, physical therapy and consultations with numerous healthcare professionals.

14. Despite appropriate and continuous medical treatment, Plaintiff continued to suffer debilitating physical limitations and chronic pain.

15. As a result of her physical injury and the impact it had on both her employment and previously active lifestyle, Plaintiff suffered significant mental health issues.

16. At all times relevant to the within Complaint, Plaintiff proactively sought and received all appropriate treatment for her mental health.

17. Despite treatment, Plaintiff continued to suffer serious mental health issues because of her chronic pain and the impact her physical limitations had on her employment and lifestyle.

18. Plaintiff valued her employment, enjoying a lengthy career as an orthopedic manual physical therapist, and found meaning in life by helping others through her work.

19. In February, 2016, Plaintiff attempted to return to work unsuccessfully.

20. This attempt to return to work was unsuccessful because Plaintiff was unable to maintain the safety of herself and the patients charged to her care while carrying out the duties of her employment.

21. Cigna initially approved benefits based on physical disability through September 8, 2016.

22. Cigna denied benefits based on physical disability thereafter, even though disability was supported based on physical limitations following Plaintiff's surgery.

23. Cigna's denial of benefits based on physical limitations for this period of time was based on Cigna's assertion that although it agreed that Plaintiff was physically disabled for a period of time following her surgery, it contended that she was not continuously disabled for the

entire period she was out of work.

24. Plaintiff was initially denied benefits by letter dated September 22, 2016, and timely appealed that denial.

25. By letter dated April 11, 2017, Cigna decided Plaintiff's first administrative appeal by upholding the benefit denial.

26. Plaintiff timely pursued a second administrative appeal of her benefit denial.

27. As a result of Plaintiff's second administrative appeal, by letter dated January 22, 2018, Cigna approved additional LTD benefits based on mental health issues for the time period of September 9, 2016 through October 28, 2016, but not beyond.

28. Plaintiff brought an action in this Court regarding the termination of LTD benefits, which was resolved.

29. On or about July 11, 2018, Cigna informed Plaintiff that it would be conducting an evaluation to determine her eligibility for benefits beyond June 10, 2018.

30. Effective June 10, 2018, the criteria for eligibility for LTD benefits changed under the LTD policy:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1) unable to perform the material duties of his or her Regular Occupation; and
> 2) unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience, and
> 2. unable to earn 80% or more of his or her Indexed Earnings.

31. By letter dated January 10, 2019, Cigna notified Plaintiff that it was discontinuing

6

LTD benefits because, in its view, Plaintiff was no longer disabled as defined by the policy.

32. Cigna alleged that it had determined that based upon a review of Plaintiff's medical records, Plaintiff was ". . . capable of performing at a sedentary occupational demand level, as well as your own medium demand occupation."

33. Cigna further alleged that it had conducted a Transferrable Skills Analysis, which had purportedly determined that Plaintiff could perform the sedentary occupations of Claim Examiner and Coordinator, Volunteer Services, as well as Plaintiff's own medium demand occupation of Physical Therapist.

34. By letter dated March 12, 2019, Plaintiff timely appealed the January 10, 2019 termination of LTD benefits.

35. The LTD Policy provides, in pertinent part:

**Return to Work Incentive**

The Return to Work Incentive is shown in the Schedule of Benefits.  An Employee may work for wage or profit while Disabled.  In any month in which the Employee works and a Disability Benefit is payable, the Return to Work Incentive applies.

The Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability.

36. The LTD Policy further provides, in pertinent part:

*Return to Work Incentive*

During any month the Employee has Disability Earnings, his or her benefits will be calculated as follows.

The Employee's monthly benefit payable will be calculated as follows during the first 24 months disability benefits are payable and the Employee has Disability Earnings:
  . . .

After disability benefits are payable for 24 months, the monthly benefit payable is the Gross Disability Benefit reduced by Other Income Benefits and 50% of Disability Earnings.

37. The LTD Policy further provides, in pertinent part:

**DEFINITIONS**

. . .

**Disability Earnings**
Any wage or salary for any work performed for any employer during the Employee's Disability, including commissions, bonus, overtime pay or other extra compensation.

38. As noted in her appeal letter dated March 12, 2019, Plaintiff's providers still had not cleared her to return to work as a physical therapist due to the physical demands of that position.

39. As noted in her appeal letter dated March 12, 2019, Plaintiff also went back to school to qualify as a social worker.

40. As noted in her appeal letter dated March 12, 2019, while going back to school, Plaintiff was able to secure part-time employment at South County Hospital in social work for about 20 hours per week, beginning in about January, 2018 and was receiving partial benefits under the Return to Work Incentive.

41. As noted in her appeal letter dated March 12, 2019, even in this part-time role, Plaintiff experienced significant challenges due to her shoulder condition.

42. For example, Plaintiff could only carry a clipboard and take down client information for a limited period of time due to her continued bilateral shoulder pain, weakness, and poor postural endurance.

43. For another example, Plaintiff could only work on a computer for a limited time period due to her continued shoulder pain.

44. In roughly April, 2019, Plaintiff attempted to work as a physical therapist on a volunteer basis.

45. After a few sessions, Plaintiff was unable to continue as a physical therapist even on a volunteer basis due to exacerbation of shoulder pain.

46. As 2019 wore on, Plaintiff had increased difficulty tolerating and completing her work in the part-time position.

47. On or about July 29, 2019, Cigna denied Plaintiff's appeal of the January 10, 2019 LTD termination.

48. Cigna's denial letter claimed that a review had been performed by a physician, who had concluded that the following limitations would be appropriate:

- No lift/carry/push/pull more than 20 lbs. on an occasional basis.
- No overhead reaching
- No climbing ladders
- Constant sit/stand/walk, crouch, crawl

49. Cigna's July 29, 2019 appeal denial further alleged that it had had another review of Plaintiff's medical records performed by a psychiatrist, who had concluded that Plaintiff would not be considered impaired due to psychiatric symptoms.

50. Cigna's July 29, 2019 appeal further alleged that it had had another review performed by a specialist in Occupational Medicine, who opined that the following restrictions were appropriate:

- Standing – constant
- Walking – constant
- Lifting occasional 20 lbs.
- carrying occasional 20 lbs.
- pushing occasional 20 lbs.
- pulling occasional 20 labs.
- climbing stairs constant
- stooping – constant
- kneeling – constant
- crouching – constant
- crawling – never
- Sitting – constant

6

- Reaching constant at desk level; occasional all other levels
- use lower extremities for foot controls – constant
- Fine manipulation – constant
- Simple and firm grasping – frequent.

51. Cigna further maintained that Plaintiff could perform the sedentary occupations of Claim Examiner and Coordinator, Volunteer Services, as well as Plaintiff's own medium demand occupation of Physical Therapist.

52. By letter dated October 16, 2019, Plaintiff timely appealed the July 29, 2019 appeal denial.

53. Plaintiff's October 16, 2019 appeal emphasized that Plaintiff was not at that time claiming a psychiatric disability.

54. By the end of 2019, Plaintiff's condition deteriorated to the point where she was required to take a leave of absence and undergo another shoulder surgery.

55. In or about May, 2020, Plaintiff returned to her position at South County on a 24-hour-per week basis, and was only gradually able to attempt to return to work full-time as a social worker.

56. Plaintiff continued to have difficulty tolerating and completing her work, and still had to take a great deal of time out for treatment and pain.

57. South County has unusually accommodating to Plaintiff in her efforts to maintain employment.

58. By letter dated June 10, 2020, Cigna again denied Plaintiff's appeal.

59. Cigna's June 10, 2020 denial alleged that it had had a medical records review conducted by a Board-certified Orthopaedic surgeon.

60. Cigna's June 10, 2020 denial alleged that it had conducted a Transferrable Skill Analysis.

61. Cigna's June 10, 2020 denial maintained that Plaintiff could have performed a sedentary occupation, except for the period of December 11, 2019-February 10, 2020, when she was recovering from surgery.

62. Cigna's June 10, 2020 denial further maintained that Plaintiff could perform the sedentary occupations of Claim Examiner and Coordinator, Volunteer Services, as well as Plaintiff's own medium demand occupation of Physical Therapists.

63. By letter dated July 6, 2020, Cigna again denied the appeal, on the same basis as in the June 10, 2020 letter.

64. Plaintiff exhausted the administrative appeal process.

65. During the administrative appeal process Plaintiff met the Plan definition of continuous partial disability and provided Cigna with appropriate medical documentation to fully support her LTD benefit appeals.

66. Plaintiff has now exhausted all available administrative appeals.

67. Plaintiff submits that she remained eligible for LTD benefits subsequent to January 10, 2019, through the Cigna policy, as she meets the policy definition of "Disabled."

68. Plaintiff submits that the medical documentation and evidence in the claim file fully supported Plaintiff's claim that she met the LTD Plan definition of "Disabled" subsequent to January 10, 2019.

69. Among other things, Defendant failed to give due weight to the opinions of Plaintiff's treating physician, who noted limitations on her functional capacity due to impaired range of motion, muscular weakness and atrophy, and chronic pain.

70. As a result of the denial of LTD benefits, Plaintiff has suffered the loss of the value of LTD benefits, and has suffered other pecuniary damages including attorney's fees and costs of

the within litigation.

## COUNT I
## DENIAL OF PLAN BENEFIT
## 29 U.S.C. § 1132(a)(1)(B)

71. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

72. Plaintiff Plan Beneficiary, at all times since January 10, 2019, has been and continues to be Disabled within the meaning of the Plan, and therefore eligible to receive Long Term Disability benefits thereunder.

73. By correspondence dated July 6, 2020, Defendant made a final denial of Plaintiff's claim for benefits.

WHEREFORE, Plaintiff prays for the relief requested herein.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## 29 U.S.C. § 1132(a)(3)

74. Plaintiff hereby realleges in full in this paragraph the allegations set forth in all other paragraphs of this Complaint.

75. Defendant stands in the position of fiduciary to Plaintiff.

76. In breach of its fiduciary duty, Defendant has wrongfully failed and/or refused to appropriately pay Plaintiff monthly LTD benefits pursuant to the provisions and requirements of the Plan.

WHEREFORE, Plaintiff prays for the relief requested herein.

## PRAYER FOR RELIEF

Plaintiff Judy LePage, prays that this Court grant her the following relief:

1. Declare that Plaintiff stands entitled to Long Term Disability (LTD) benefits under

    the terms of the LTD policy;

2. Order Defendant to pay Plaintiff's LTD benefits retroactive to termination;

3. Award Plaintiff reasonable attorney's fees, litigation expenses and costs;

4. Award Plaintiff appropriate interest on all such monies; and

5. Such other and further relief as the Court deems just and proper to award Plaintiff.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

    Respectfully submitted, PLAINTIFF
    JUDY LEPAGE
    By her Attorneys,

    /s/ Vicki J. Bejma
    Noelle K. Clapham #5338 Vicki J. Bejma
    #6498 Robinson & Clapham
    123 Dyer Street Suite 135
    Providence, RI  02903
    (401) 331-6565
    (fax) 331-7888
    claphamlaw@verizon.net
    vbejma@smrobinsonlaw.com